**S. B. TRESSLER, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 14205.**

United States Court of Appeals
Ninth Circuit.

Nov. 10, 1955.

Joseph A. Fitzsimmons, Fort Lauderdale, Fla., for petitioner.

H. Brian Holland, Asst. Atty. Gen., John Potts Barnes, Chief Counsel, I. R. S., Chicago, Ill., Melva Graney, Ellis N. Slack, A. F. Prescott, George F. Lynch, Sp. Assts. to Atty. Gen., for respondent.

Before HEALY and POPE, Circuit Judges, and LINDBERG, District Judge.

LINDBERG, District Judge.

This case is before the court on a petition to review a decision of the Tax Court of the United States.

The facts for the purpose of review are to be found largely in the memorandum findings of fact and opinion of the Tax Court which are not officially reported.[1] They may be summarized as follows:

Petitioner, residing in Reno, Nevada, filed his federal income tax returns for 1946 and 1947 on the cash basis.

In August, 1944 he married Ada Zoeller Tressler in Maryland. On their honeymoon they visited petitioner's sons Norman and Kenneth in Reno, and subsequently went to Florida to spend the winter. Early in 1945 petitioner purchased several parcels of real estate in Florida, including two apartments known as Maxwell Court Apartments for $45,000 and Tarpon River Apartments for $22,875, title to which was taken in the name of petitioner's son Kenneth.

On March 7, 1945 Ada filed in the Circuit Court of Florida a "Bill for Alimony Unconnected with Divorce,"[2] praying for "temporary and permanent support and alimony unconnected with a divorce together with suit money and a reasonable amount with which to compensate her attorneys." She also asked for a decree adjudging that the properties purchased in the name of Kenneth were held in trust for petitioner and requested that a receiver be appointed to take charge of the apartments, collect the rents and pay the proceeds into court to insure the payment of any sums that might be adjudged due and payable to her by petitioner.

On March 13, 1945 the Florida Court entered an order appointing Ruth Westerberg receiver for the apartment properties (other property of petitioner in Florida was not included in the receivership), restraining Kenneth and petitioner from transferring the properties, and directing the receiver to collect the rents, pay expenses of operation, and deposit the balance of the receipts in a bank subject to further court order.

Petitioner was served with process by publication, and a decree pro confesso rendered against him on June 5, 1945.[3] He at no time appeared or submitted himself to the Florida state court's jurisdiction.[4]

On June 28, 1945 an order was entered making an allowance of $300 per month, retroactive to March 3, 1945, for temporary alimony and support of Ada and $2,000 temporary attorney fees, and court costs of $334.86. This order was appealed by Kenneth without avail.

On July 17, 1945 petitioner was granted a divorce from Ada in the District Court of Nevada. Ada did not appear in or contest the Nevada divorce action and no provision for alimony was made therein.

In October, 1945 Kenneth sought to file a further answer in the Florida pro-

---

1. While the transcript of record contains a portion of the transcript of proceedings before the Tax Court, consisting of the testimony of S. B. Tressler, such testimony does not materially conflict with the findings of fact as made by the Tax Court.

2. Provided for under Sec. 65.09, Florida Statutes Annotated.

3. Par. 3, Exh. #9.

4. Petitioner's brief p. 4.

ceedings in an effort to secure possession of the apartment properties and to plead the Nevada divorce, but was denied the right to file the answer. By order dated January 7, 1946 the Florida court decreed that the apartment properties were the properties of petitioner and held in trust for him by Kenneth. Later in January the court ordered the receiver to pay the sum of $5,334.86 as follows: $3,000 for accrued support of Ada from March 3, 1945 to January 3, 1946; $2,000 temporary attorneys fees; and $334.86 costs.

An appeal from these orders by Kenneth resulted in an affirmance by the Florida Supreme Court, Tressler v. Tressler, 157 Fla. 881, 27 So.2d 341, and the United States Supreme Court denied certiorari, 329 U.S. 796, 67 S.Ct. 481, 91 L.Ed. 681. While the appeal of the Florida state court proceeding was pending petitioner filed suit in the United States District Court in Florida seeking recovery of the apartment properties. A motion to dismiss this action was granted and an appeal taken. While the latter appeal was pending and after Kenneth's petition for certiorari was denied by the United States Supreme Court, the parties entered into a settlement agreement under which Ada acquired the Tarpon River Apartments and other properties and petitioner retained the Maxwell Court Apartments. In accordance with the settlement agreement all the litigation above described was terminated and a decree entered by the Florida court to the effect that the various court orders be marked satisfied and the properties be released from the receivership.

A summary of the income and disposition of the rents collected, expenses paid, and disposition of the remaining funds by years by the receiver appears in the margin.[5]

On August 31, 1947 the petitioner sold the Maxwell Court Apartments for $59,000.

In connection with the litigation in the Florida and the United States Courts, petitioner bore the expense of legal representation for Kenneth and himself. For the year 1946 he claimed on his return a deduction of $1,425 for legal expenses and attorney fees; by amended pleadings before the Commissioner he claimed $5,500. For 1947 he claimed a deduction of $5,035 for such expenses; by amended pleadings before the Commissioner he claimed $6,535.

The Commissioner determined a deficiency of $701.07 for 1946 based on disallowance of claimed legal expenses of $1,425 and depreciation of $1,931.25. By amended answer the Commissioner increased the deficiency for 1946 to $2,239.64 based on his contention that the tax-

|  | 1945 | 1946 | 1947 | Total |
|---|---|---|---|---|
| [5] Rents collected | $7,393.50 | $11,092.95 | $2,410.00 | $20,896.45 |
| Expenses paid | 2,992.91 | 3,199.48 | 2,269.50 | 8,461.89 |
| Income after maintenance expenses | $4,400.59 | $ 7,893.47 | $ 140.50 | $12,434.56 |
| Other payments by receiver: | | | | |
| Ada Tressler | | $ 3,000.00 | $ 984.69 | $ 3,984.69 |
| Davis & Lockhart, Attorneys for Ada Tressler | | 2,000.00 | 2,862.55[*] | 5,197.41 |
| Ruth Westerberg, Receiver | | | 1,559.46 | 1,559.46 |
| Hugh Lester, Attorney for Receiver | | | 1,500.00 | 1,500.00 |
| Court Costs | | 334.86 | 193.00 | 193.00 |
| Total other payments by receiver | | $ 5,334.86 | $7,099.70 | $12,434.56 |
| Amount retained by receiver | $4,400.59 | $ 2,558.61 | | |

* This amount according to the court's order was for expenses and attorney fees "for services rendered to the Receiver, in all Federal Courts."

payer realized additional income by reason of the payment of $5,334.86 made by the receiver to Ada under the January 17, 1946 order of the Florida court for support, attorney fees, and court costs.

The Commissioner determined a deficiency of $936.29 for 1947 as a result of the disallowance of the claimed deduction of $5,035 for attorney fees and an error of $1,000 (admitted by taxpayer) in computing net income. By amended answer this deficiency was increased to $3,967.15 partly based on the contention that the taxpayer realized additional income by reason of payments amounting to $7,099.70 made by the receiver under final decree of the Florida court dated July 16, 1947. The increase also was occasioned by disallowance of $2,517.50 legal expense which were added by the Commissioner to the cost of the Maxwell Court Apartments in computing the capital gain arising from the sale thereof. Another portion of the increase resulted from increasing the capital gain by offsetting depreciation for 1946 on the apartment in the sum of $1,246.

The Tax Court sustained the Commissioner in his actions with respect to both tax years, except that for the year 1947 it held that the items of $2,862.55 and $1,500 paid to the attorneys for the receiver (See schedule in margin supra) represented receivership expenses and did not, as the Commissioner contended, constitute additional income to the petitioner. Decisions were entered by the Tax Court in accordance with a computation made under Rule 50 of the Tax Court rules, 26 U.S.C.A. (I.R.C.1954), § 7453.

The petitioner contends first that the Tax Court erred in holding that the sums paid Ada Tressler by the receiver pursuant to court order of temporary support, attorney fees and court costs constituted income to the taxpayer. To sustain this contention he asserts that the Tax Court failed to accord full faith and credit to the final decree of divorce entered by the Nevada court on July 17, 1945 and further failed to consider that payments made by the order of the Florida state court dated January 17, 1946 were made from properties held in trust and subsequent to divorce and were taxable to the former wife Ada and not to petitioner.

The gist of petitioner's complaint in reality appears to be that the Florida state court erred in holding him obligated to make payments to his one-time wife Ada and in satisfying such obligation through the sequestration of certain of his Florida properties. Failing before the Florida as well as the United States courts in the principal litigation he now seeks to be relieved, in part at least, through avoiding tax liability on income actually not in hand received [6] but held by the Florida courts to be his although owing to others under legal obligation. Neither the merits nor the validity of the Florida litigation and decrees were before the Tax Court for review nor are they before us. Those issues were resolved when, after the United States Supreme Court refused certiorari and the United States District Court denied relief, petitioner settled the Florida suit for "temporary alimony and support."

The question before the Tax Court was the tax liability resulting from the in-

---

6. The fact that the taxpayer did not actually receive any of the revenue collected by the receiver from the operation of the apartment properties and paid to his wife pursuant to the orders of the Florida court, does not relieve him from liability for tax thereon. Taxpayer reported his income on the cash receipts and disbursements basis and is, therefore, taxable on income when credited to him. The discharge of taxpayer's indebtedness in 1946 and 1947 by the payment of temporary alimony and support, attor-

neys' fees, and court costs constitutes a receipt by taxpayer of the sums so paid. See Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; United States v. Boston & M. R. R. Co., 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929; Helvering v. Horst, 311 U.S. 112, 61 S Ct. 144, 85 L.Ed. 75; Commissioner v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830, rehearing denied 324 U.S. 695, 65 S.Ct. 891, 89 L.Ed. 1295.

360

come received and sums paid from rentals of petitioner's Florida apartment properties in receivership. In ascertaining this the Tax Court was bound by and followed the decree of the Florida court just as it was bound by and followed the Nevada decree of divorce.

■ Petitioner's contention that the payments made to his former wife under order of the Florida court were taxable as income to her and not to petitioner under the provisions of Sections 22(k), 23(u) and 171 of Title 26 U.S.C. is not tenable under the unquestioned findings of the Tax Court. These findings were:

"The payments before us were made pursuant to orders of the Florida court in a suit entitled a 'Bill for Alimony Unconnected with Divorce.' They were denominated as 'temporary alimony and support' by the court in its orders. So far as we can ascertain there never was entered in this litigation a 'decree of separate maintenance' * * * The payments were tied in with the Florida litigation alone and had no relation to the Nevada divorce which made no provision whatever for alimony or support." [7]

The Tax Court held that such payments to be deductible under Sections 22(k) and 23(u) of Title 26 U.S.C. must be paid when the wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, subsequent thereto; and in discharge of an obligation imposed under such decree or under a written instrument incident to such divorce or separation.

The payments here involved were not paid in discharge of an obligation imposed under a decree of divorce or under a written instrument incident to a decree of divorce or separate maintenance. We believe the Tax Court was correct in its holding that the payments were not deductible by the petitioner or chargeable to his former wife. The interpretation of Sections 22(k) and 23(u) of Title 26 U.S.C. as applied to the facts herein is consistent with the construction given these sections of the statute by the Tax Court since their enactment by Congress in 1942. Brown v. Commissioner, 7 T.C. 715; Wick v. Commissioner, 7 T.C. 723, affirmed, 3 Cir., 161 F.2d 732; Kalchthaler v. Commissioner, 7 T.C. 625; Daine v. Commissioner, 9 T.C. 47, affirmed, 2 Cir., 168 F.2d 449, 4 A.L.R.2d 248. The courts of appeals of the second, third and seventh circuits in Daine v. Commissioner, supra, Smith v. Commissioner, 2 Cir., 168 F.2d 446, Wick v. Commissioner, supra, and Terrell v. Commissioner, 7 Cir., 179 F.2d 838 have all in well-reasoned opinions concurred in the construction as applied by the Tax Court and we see no reason to depart therefrom. See also Annotation 4 A.L.R.2d 252.

The variation in facts as presented here do not in our opinion distinguish this case from those herein cited where payments made under court decree or agreements were held not deductible under the test applied by the Tax Court and affirmed by the courts on appeal.

The petitioner in his brief has made reference to Section 107 of Title 26 U.S. C.A., asserting that payments made under the Florida court order come within said section as well as Sections 22(k) and 23(u). He has wholly failed to enlighten the court as to just how said Section 107 is applicable. There not only is no evidence but there is no contention with respect to the existence or establishment of an alimony trust such as might be subject to the provisions of said section.

Petitioner further contends that the Tax Court erred in holding that legal expenses incurred by petitioner in seeking to terminate the receivership over petitioner's income-producing properties were not deductible. Petitioner apparently relies on Section 23(a) (2) of Title 26 U.S.C.A. and urges that court costs

7, These findings are fully supported by the decrees and order of the Nevada and Florida courts. Petitioner's Exhibit 4 and Respondent's Exhibit "E".

and attorney fees incurred by him and Kenneth Tressler as constructive trustee (the Florida court having held Kenneth to be a constructive trustee in holding title to the apartment properties) in defending and maintaining litigation seeking to protect the title and right to possession as well as the right to receive the earnings from income-producing properties were a necessary [8] expense, being an attempt to conserve his apartment business held for the production of income.

■ Generally, fees paid by a husband in resisting his wife's monetary demands incident to a divorce are not deductible under Section 23(a) (2), Smith Estate v. Commissioner, 3 Cir., 208 F.2d 349; Howard v. Commissioner, 9 Cir., 202 F.2d 28; Donnelley v. Commissioner, 16 T.C. 1196. However, when the controversy between the spouses goes not to the question of liability but to the manner in which it might be met and, at the same time the wife demands a part of the husband's income-producing property, control over which affects the husband's general income-earning capacity, legal fees incurred by the husband are deductible. Baer v. Commissioner, 8 Cir., 196 F.2d 646; McMurtry v. United States, Ct.Cl., 132 F.Supp. 114.

■ Whether or not legal expenses were incurred as an ordinary and necessary expense in the conserving of property held for the production of income is essentially a question of fact. The Supreme Court in Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 1235, 89 L.Ed. 1670, held that the requirement of Section 23(a) (2) that deductible expenses be " 'ordinary and necessary' " implies that they must bear a proximate relation to the management of property held for the production of income and that the question of proximity was ordinarily for the trier of

facts—in that case as it would appear here—the Tax Court.

The Tax Court allowed petitioner's claim for deduction with respect to fees and legal expenses paid the attorneys other than those employed by petitioner for services rendered the receivership and receiver and like treatment was accorded the receiver's fee.[9] However, the Tax Court found and held that while a receiver was appointed for part of petitioner's properties as an incident of the litigation to insure payment of whatever might be found due Ada from the petitioner for support, attorney fees and costs, the core of the litigation was not the receivership but the obligation of petitioner to support his wife and that the legal expenses were incurred primarily to defeat the wife's suit and not to protect the petitioner's property.[10]

■ There is no evidence in the record before this court nor are we aware of any decision [11] upon which we can decide that the findings or conclusion of the Tax Court on this issue are erroneous.

In conclusion on this issue we may properly add that petitioner's argument on his first assignment of error in itself clearly establishes that the real issue in the Florida litigation as far as he was concerned was the question of his liability for support rather than the manner in which such liability might be met.

Petitioner's remaining contention of error is that the Tax Court erred in refusing to allow petitioner increased depreciation on the building and furniture of the two apartment houses. At the outset it should be noted that one apartment house—the Tarpon River Apartments—was transferred to Ada on a date not ascertainable from the record before us, but occurring sometime between the Florida court order of January 17, 1946 and the same court's final decree dated July 17, 1947.[12]

8. Petitioner's brief refers to necessary *business* expense.

9. Transcript p. 9.

10. Transcript p. 13.

11. Petitioner in his brief cited no authority and our research has disclosed none.

12. Respondent's Exhibit "E". Petitioner's brief pp. 26 to 35. Transcript p. 5.

The Tax Court in approving petitioner's original claim for depreciation stated[13] that because of its holding "that the petitioner was properly taxable on income for the receivership in 1946 we also hold that the claimed depreciation should have been allowed." As to the increased claim the Tax Court continued:

"The petitioner in his amended pleadings has increased this claim to $3,020. The record *contains no evidence* on which we could reasonably make any finding on this issue and the increased claim is disallowed." (Emphasis supplied).

██ We have searched the record before the court and can find no evidence upon which this court could come to any other conclusion than that reached by the Tax Court. The petitioner in his brief on this issue calls attention to no evidence of facts other than the findings of the Tax Court with respect to the purchase price of the apartment properties and the allocation of value to land, buildings and furniture. Manifestly these do not sustain his contention of error. The burden of clearly showing the right to the claimed deduction is on the taxpayer. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607.

The decision of the Tax Court is affirmed.

POPE, Circuit Judge (concurring specially).

I agree with much that is said in the opinion, but I have reservations concerning what is said respecting the application of the rule of Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, to the facts of this case. The opinion here treats the Bingham case as one turning on determination of a question of fact. On the contrary, the facts there, as here, were not in dispute. The questions for decision related solely to the meaning of the words of § 23(a) (2), " 'property held for the production of income.' " Said the Court: "They are 'clear cut' questions of law." After that section was added to the code in 1942 to abrogate the rule of Higgins v. Commissioner, 312 U. S. 212, 61 S.Ct. 475, 85 L.Ed. 783, the Supreme Court rejecting the Commissioner's narrow view of the new section, held in the Bingham case that the section should have a liberal interpretation, to the end that a taxpayer engaged in the management of property which produces income should be allowed the same type of deductions as would be allowed if his activities were a trade or business.

If Tressler had been in business, and efforts were made to have a receiver appointed for certain property used in that business, legal expense in resisting the proposal, or in an attempt to discharge a receiver, would be deductible as a matter of course. Whether that defense was wisely conducted, or vitally necessary, would be no concern of the tax authorities. Here the attempted receivership concerned property which produced income. Assuming, as did the Florida court and the Tax Court, that this was in truth and in fact the taxpayer's property, I think it could well be contended that his efforts to resist the receivership were for the conservation of property held for the production of income, and legal expenses to that end were deductible within the principle of the Bingham case.

While I thus view this matter differently from the majority, I think the result reached by the Tax Court must be affirmed. The expense of resisting the wife's action in its entirety was not deductible under the rule of Howard v. Commissioner, 9 Cir., 202 F.2d 28. Had there been proof of just what legal expense was attributable to the receivership of this income-producing property, the case would be otherwise. In McMurtry v. United States, 132 F.Supp. 114, the Court of Claims, after rejecting a motion to dismiss, held that the taxpayer whose lawyers had been employed to

---

13. Transcript p. 14.

resist his wife's demands that a large block of his income-producing stock be placed in trust, could prove, in support of his claimed right to deduct attorneys' fees, "what *proportion* of the legal services were utilized in resisting his wife's demands against specific income-producing property". (Emphasis mine).[1] The lack of proof of this proportion here requires an affirmance of the Tax Court decision.

1. The necessity of apportioning the legal expense as between that incident to defending the main action, and that incident to releasing the impounded property, is similar to that required in making proof of damages by way of attorneys' fees in a suit upon an attachment bond. See Reachi v. National Auto & Cas. Ins. Co., 37 Cal.2d 808, 236 P.2d 151.